**Jefferson Trust and Savings Bank, Appellee, v. W. Heller and Son, Inc., et al., Appellants.**

**Gen. No. 8,869.**

400

CASSIDY & KNOBLOCK, of Peoria, and ALVIN D. BLIEDEN, of Chicago, for appellants.

BARTLEY & YOUNGE, of Peoria, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is an appeal from an order of the circuit court of Peoria county denying the defendants' motion to open up a judgment against the defendants in the sum of $18,602.05, and for leave to the defendants to plead to the original declaration. The action was on a narr and cognovit on account of a promissory note of the principal sum of $17,261.87, with interest at the rate of seven per cent per annum, due the Jefferson Trust & Savings Bank of Peoria, Illinois. The note is purported to have been signed by W. Heller & Son by Samuel Heller, as secretary and I. M. Heller, as president. The note was indorsed individually by R. A. Heller, Samuel Heller and I. M. Heller. The defendants filed affidavits in support of their motion to vacate and open up the judgment. On January 27, 1934, the court denied the motion to open up the judgment and give defendants leave to plead. To review this order the case is brought to this court on appeal.

The affidavit filed by the defendants is in substance as follows:

No. 1. "That said defendants believe that the defendants have a meritorious defense to the whole of

claimant's demand, and that the defendants and each of them have good legal and equitable grounds for granting a motion to vacate the judgment and set aside and recall the execution in said cause and in support of said affidavit the nature of the defenses and the grounds relied upon were outlined as follows:

"That on December 21st, 1933, was filed in the Circuit Court of Peoria County, Illinois, a certain bill in equity entitled W. Heller & Son, Inc., a corporation, et al. v. Jefferson Trust & Savings Bank of Peoria, a banking corporation, et al., a copy of which bill is as follows:

"State of Illinois, } ss.
County of Peoria. }

"In the Circuit Court of Peoria County in Chancery.

"W. Heller & Son, Inc., a Corporation; Rufus Heller, I. M. Heller,
vs.
Jefferson Trust & Savings Bank of Peoria, a banking corporation; John C. Wynd, individually and as Trustee; Harry A. Frankel, Robert Silberstein, Sam Heller.

No...........

"To the Honorable Judges of the Circuit Court in Chancery Sitting:

"Bill for Reformation, Etc.

"1. Your orator, W. Heller & Son, Inc., respectfully represents that it is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois, having its principal office in the City of Peoria, State of Illinois; your orators Rufus Heller and I. M. Heller respectfully represent unto this Hon-

orable Court that they are residents of the City of Peoria, County of Peoria, and State of Illinois.

"2. That at various and divers times one of the defendants herein, Sam Heller, purchased certain shares of the common capital stock of the State Trust and Savings Bank, a banking corporation located in the City of Peoria, State of Illinois; that said State Trust and Savings Bank employed Sam Heller to purchase said stock, and the said Sam Heller acted as an agent of the State Trust and Savings Bank for the purchase of said stock; that the said Sam Heller purchased in all a total of one hundred and fifty-five (155) shares of the common capital stock of the said banking corporation; that as the shares of said stock were purchased, the said stock was taken and held as collateral by the State Trust and Savings Bank to secure certain advances made to the defendant Sam Heller to cover the purchase price of each of the particular transactions involving the acquisition of said shares in the said bank.

"3. That although the facts are peculiarly within the knowledge of the defendants and others, your orators believe that the said State Trust and Savings Bank ceased to do business as a banking institution during the month of February, 1931, and from that day until the day hereof continues to cease from doing business as a banking institution in the State of Illinois.

"4. That following the closing of said bank certain officials of the State Trust and Savings Bank and others, entered into negotiations for the purpose of formulating a plan whereby a reorganization of the affairs of the State Trust and Savings Bank would be accomplished and said bank opened for the purpose of doing business in the City of Peoria, State of Illinois; that your orators have been informed and believe that said plan of reorganization provided that a new banking corporation was to be organized, and that said banking corporation was to assume and pay all deposit

liabilities of the State Trust and Savings Bank in full, at the date of the closing of said State Trust and Savings Bank, and said plan further provided that there was to be organized a certain corporation which was to receive certain assets of various description and kind, which were formerly a part of the assets of the State Trust and Savings Bank, and which assets were to have a face value of, to wit, $500,000; that said plan further provided that the stockholders of the State Trust and Savings Bank in lieu of their stock liability to said bank were to subscribe for share and share alike of the common capital stock of a corporation to be formed, and that said stockholders should subscribe and pay in a total sum of two hundred thousand dollars ($200,000.00) in cash; that the total amount of the assets transferred from the State Trust and Savings Bank to the new corporation should act as collateral to reimburse the stockholders for the funds which they were to raise when, as and if said assets were liquidated.

"5. That pursuant to said plan of reorganization one of the defendants herein, Harry Frankel, and others of the City of Peoria, exerted their efforts towards obtaining from the stockholders the two hundred thousand dollars ($200,000.00) required, and in making such other necessary arrangements to permit the new bank to open.

"6. That on the seventeenth (17th) day of October, A. D. 1931, there was executed by one of the defendants herein, Sam Heller, and delivered to Harry Frankel a certain promissory note in the principal sum of $15,500.00, with confession of judgment clause, the said note being payable to John C. Wynd, trustee, said note appearing more specifically as Exhibit A herein and attached hereto and made a part of this bill of complaint.

"7. That said note was executed by Sam Heller and delivered to Harry Frankel in lieu of the purchase of

one hundred and fifty-five (155) shares of the common capital stock of the corporation to be formed for the purpose of procuring the funds required of the stockholders of the State Trust and Savings Bank; that Sam Heller was unable to pay for his subscription in cash and was permitted to give his note as appears in Exhibit A herein.

"8. That on, to wit, the twenty-seventh (27th) day of October, A. D. 1931, a charter was issued to the Jefferson Trust and Savings Bank of Peoria, a banking corporation authorized to do a banking business in the City of Peoria, State of Illinois; that there was also authorized by the Secretary of State of Illinois a corporation to be known as Peoria Investment Company, which corporation was to procure the two hundred thousand dollars ($200,000.00) in cash required from the stockholders and to hold and liquidate the five hundred thousand dollars ($500,000.00) face amount of assets for the benefit of the stockholders in said Peoria Investment Company, a corporation.

"9. That thereafter, prior to the opening of the Jefferson Trust and Savings Bank of Peoria, the said Harry Frankel demanded that Sam Heller procure the signature of W. Heller & Son, Inc., a corporation, on said note; that Harry Frankel represented that said note could not be discounted without the signature of the corporation; that Sam Heller informed Harry Frankel that he would be unable to get the corporation to pass a resolution authorizing the execution of a corporate obligation by the proper authorities; however, Frankel insisted upon obtaining the signature of said corporation, and in fact returned to the offices of the corporation many times attempting to induce the officers of said corporation to execute said instrument along with Sam Heller.

"10. That on or about, to wit, the twenty-seventh (27th) day of October, A. D. 1931, Harry Frankel came to the office of the complainant corporation, located at

1000 South Washington street, in the City of Peoria, State of Illinois, and did again then and there demand that the said corporation execute the aforesaid note in favor of John C. Wynd, trustee; the said Harry Frankel stated that if the said Sam Heller did not obtain the signature of the aforementioned corporation that it would be necessary for the trustee of the said State Trust and Savings Bank to enforce stock liability against the said Sam Heller; your orator further states that on the same occasion the said Harry Frankel did then and there promise to the president of the complainant corporation, I. M. Heller and to Sam Heller that if he, the said I. M. Heller, would execute said note in the name of the corporation, although he, the said Harry Frankel, already well knew that the corporation would not authorize the necessary and proper resolutions confirming the acts of its officers for the execution of such an instrument that he, the said Harry Frankel, would procure the return of such instrument to the corporation from the Jefferson Trust and Savings Bank of Peoria; that he further stated to Sam Heller that he would take it upon himself to procure the return of the said note to the complainant corporation and permit Sam Heller to substitute his personal note in the sum of fifteen thousand five hundred dollars ($15,500.00) in lieu thereof.

"11. That said Harry Frankel represented to your orators that it was contemplated that he would be a director of the Jefferson Trust and Savings Bank of Peoria, and that he would obtain the return of said note signed by the corporation; that relying upon said representations, promises and inducements the said I. M. Heller signed the corporate name and delivered said instrument to the said Harry Frankel conditioned upon the return of said instrument within a reasonable time in exchange for a new note to be signed solely by Sam Heller.

"12. That during the month of November, 1931, the Jefferson Trust and Savings Bank of Peoria opened as a banking institution and began regular banking business in the City of Peoria, State of Illinois, and the said Harry Frankel became a director thereof, and is at the date hereof a director of said bank.

"13. That on or about, to wit, March fifteenth (15th), 1932, the said Sam Heller and Rufus Heller were called to the offices of George Shurtleff, in the City of Peoria, and were advised that he had been instructed to procure from them a note in lieu of the original note which he stated was then in possession of the Jefferson Trust and Savings Bank of Peoria, and that said George Shurtleff demanded that the new note be in favor of Jefferson Trust and Savings Bank of Peoria in the sum of fifteen thousand seven hundred fifty dollars ($15,750.00); that Sam Heller and Rufus Heller advised George Shurtleff, who was then and is now a director of the Jefferson Trust and Savings Bank, that the note herein known as Exhibit A was signed and delivered by I. M. Heller, as president of W. Heller & Son, Inc., upon a certain condition that it be returned to the corporation within a reasonable time and substitution thereof be made for the personal note of Sam Heller, and Sam Heller and Rufus Heller did thereupon refuse to execute the new note as requested by the said George Shurtleff; that they were then advised by George Shurtleff that he had been instructed to file suit against the complainant corporation herein and to sell a certain first mortgage held by the Jefferson Trust and Savings Bank of Peoria as collateral for a certain indebtedness of eight thousand dollars ($8,000.00) due and owing to said bank by the complainant corporation.

"14. That your orators and Sam Heller not desiring to enter into litigation and because of the general depression throughout the country and particularly

with the desire to prevent the forced sale of the first mortgage upon their property at public auction on the courthouse steps, held by the Jefferson Trust and Savings Bank of Peoria as collateral to the indebtedness of eight thousand dollars ($8,000.00) due and owing by W. Heller & Son, Inc., to said Jefferson Trust and Savings Bank did procure the corporate signature on the note as requested by George Shurtleff; that your orators, Rufus Heller and I. M. Heller, having a financial interest in the W. Heller & Son, Inc., corporation, and hoping to avoid litigation against the said corporation, at the request and demand of George Shurtleff, lent their personal endorsement to the said note; that the said Rufus Heller and I. M. Heller received no money, property or any benefit whatsoever in lending their signature to the aforementioned note, and that the same was affixed thereto solely because of the threats and coercion of the said George Shurtleff.

"15. That neither the note dated October seventeen (17), 1931, nor any of the notes issued subsequent thereto was ever intended to be or is an act of W. Heller & Son, Inc., and your orators further state that said corporation received no benefit whatsoever from the execution of any of said instruments, nor did said corporation receive any property or moneys in return for its execution of said instruments.

"16. That on, to wit, March fifteenth (15th), 1932, and many times following thereafter, the said Sam Heller, pursuant to the terms and agreement heretofore entered into, at the request of the complainant corporation, did offer and tender his personal note for the unpaid principal balance due for the purchase of one hundred and fifty-five (155) shares of the common capital stock of Peoria Investment Company in lieu of the note signed by the complainant corporation, and that said Jefferson Trust and Savings Bank of

Peoria refused to accept said personal note in lieu of or substitution of the note signed by the complainant corporation.

"16. (a) That on the 21st day of December, A. D. 1933, your orators made a legal tender to the Jefferson Trust and Savings Bank of Peoria of the sum of eight thousand dollars ($8,000.00) in full and complete payment of all money due and owing by W. Heller & Son, Inc., to the said Jefferson Trust and Savings Bank of Peoria, and demanded the return of a certain note held by said bank and the release and cancellation of a certain trust deed, which tender was refused by the Jefferson Trust and Savings Bank, all of which appears more specifically under Exhibit C herein, which is made a part of this bill of complaint.

"17. That your orators are informed and believe and upon such information and belief state the fact to be that the Jefferson Trust and Savings Bank of Peoria will offer for sale the certain mortgage held by it at public auction; that your orators aver the fact to be that the offer to sell said mortgage will cause your orators irreparable injury; that your orators further are informed and believe and upon such information and belief state the fact to be that the Jefferson Trust and Savings Bank of Peoria will confess judgment against your orators upon said note; that your orators are informed and believe and upon such information and belief state the fact to be that the Jefferson Trust and Savings Bank of Peoria will sell or transfer or offer for sale or transfer the certain note held by it signed by the complainant corporation.

"That by reason of the matters and things hereinbefore set forth your orators are entitled to have the said note now in the possession of the Jefferson Trust and Savings Bank of Peoria reformed and changed according to the allegations in this bill of complaint; that your orators are further entitled to the imme-

diate issuance of a writ of injunction directed to the said Jefferson Trust and Savings Bank of Peoria, restraining it from negotiating, selling or transferring the aforementioned note; that your orators are further entitled to the immediate issuance of a writ of injunction directed to the said Jefferson Trust and Savings Bank of Peoria, restraining it from confessing judgment or taking any action whatsoever upon said note; that your orators are further entitled to the immediate issuance of a writ of injunction directed to the Jefferson Trust and Savings Bank of Peoria, restraining it from disposing of or selling the said first mortgage covering a certain portion of the property commonly known as 1000–1030 South Washington street, Peoria, Illinois.

"Forasmuch, therefore, as your orators are without remedy in the premises save in a court of equity and to the end that the said Jefferson Trust and Savings Bank of Peoria, a banking corporation, John C. Wynd, individually and as trustee, Harry A. Frankel, Robert Silberstein and Sam Heller, all of whom your orators hereby make parties defendant to this bill of complaint, may make answer hereto, but not under oath, answer under oath being hereby expressly waived as to all defèndants, that upon a hearing in this cause the Court will find and adjudge that the matters and things set forth in this bill of complaint are true, and that the said defendant, or any other of the defendants herein, may be compelled by the decree of this Honorable Court to specifically perform the said agreement with your orators; that the defendant Jefferson Trust and Savings Bank of Peoria be required to deliver to your orators the note according to the tenor and effect of said agreement; that upon its failure so to do that a Master in Chancery of this court may be delegated and directed to make or cause to be made such delivery as hereinbefore prayed; that your orators may have such other, further and dif-

ferent relief in the premises as the nature of this case may require and that to your Honors may seem meet.

"And may it further please the Court to grant unto your orators the People's writ of injunction to be directed to the said Jefferson Trust and Savings Bank of Peoria, a banking corporation, restraining them, their agents and attorneys, and to each and every one of them from selling or transferring the said note or from confessing judgment under direction of said note or instituting suit thereon, or from selling or offering for sale the aforesaid first mortgage upon a portion of the premises commonly known as 1000–1030 South Washington street, Peoria, Illinois, until the further order of this Honorable Court.

"May it please your Honors to grant unto your orators the usual writ of summons in chancery, directed to the Sheriff of Peoria County, commanding that he summon all of the above-mentioned defendants personally to be and appear before this Court on the 1st day of the ........ Term thereof, to be held at the courthouse in the City of Peoria, State of Illinois, in the said Peoria County on the ...... day of ........, A. D. 19.., then and there to answer all and singular the premises and to stand to, abide by and perform such order and decree in this cause as may be in accordance with equity and good conscience.

"And your orators will ever pray, etc.

"W. Heller & Son, Inc.
By I. M. Heller,
R. A. Heller,
I. M. Heller.

"Alvin D. Blieden,
..................
Solicitors for Complainants."

This bill was sworn to by the Hellers.

"(2) Affiants further state that each allegation of said complaint is true and correct and that the facts

therein are true and correct. The affiants subscribe to the allegations and facts thereof as part of the affidavit therein and expressly make oath to the truth and correctness of each allegation and thing set forth in said bill of complaint, and the defenses of all the defendants appearing from the allegations and facts set forth in such bill of complaint are herewith set forth for the purpose of showing that all said defendants have a meritorious defense to the whole of plaintiff's demand.

"(3) Immediately following the filing of said bill for reformation wherein the prayer was requested a temporary restraining order to preclude the plaintiff from negotiating said note in the principal sum of $17,261.87, from taking judgment, selling or offering a certain collateral first mortgage held by the plaintiff, there appeared in court plaintiff and defendant, by and through their respective attorneys, and before the Honorable Henry J. Ingram, when it was understood and directed by the court that the motion for temporary restraining order prayed for in said bill for reformation should be continued to the 12th day of January, 1934; that two days following said direction by Judge Ingram, i. e., December 23, 1933, the plaintiff, by and through the same law firm, nevertheless appeared before another judge of the same circuit court, i. e., Hon. John M. Niehaus, and then and there obtained judgment by confession against the defendants and an order that execution issue immediately and, pursuant to said orders, defendants were served with execution December 27, 1933.

"(4) Affiants further state that on December 27, 1933, there was a second hearing before Judge Ingram, at which time solicitor for defendants renewed his motion for temporary restraining order including the restraining of the prosecution and enforcement of the judgment herein. Wherein the judgment was entered for the sum of $8,583.30 in cause No. 10,382 as well as

in cause No. 10,383, wherein judgment was entered in the sum of $18,602.05, and that in said second hearing John Niehaus, Jr., appeared for the plaintiff, and it was then agreed in open court that all these transactions should remain *status quo* until January 12, 1934, which date had been previously set by Judge Henry J. Ingram for final disposition of said motion of defendants.

"(5) Defendants further state that defendants would tender the sum of $8,000 lawful money of the United States of America to plaintiff bank if complete payment of this certain note herein referred to could be had and on which judgment had been taken in this cause, said note being in the principal sum of $8,000 which is the total amount due at that time. Affiants further state that defendants at this time likewise requested that certain collateral security in the form of a note and mortgage be surrendered, canceled and released of record pursuant to the terms of such collateral security.

"(6) Affiants further state that plaintiff bank then and there refused to accept such $8,000 so tendered, and refused at such time to surrender, cancel and release of record the collateral security, as herein stated.

"(7) Affiants also state that defendant corporation was at such time ready, willing and able and did make a legal tender of such sum to plaintiff bank, and is now ready, willing and able and herewith offer to pay such sum of $8,000 in satisfaction of such, herein referred to upon the surrender, cancellation and release of the collateral security pledged, as herein stated.

"(8) Affiants further state that this affidavit and the motion filed herein are being made at the earliest opportunity, that execution was served upon the defendant corporation in this cause on the 27th day of December, 1933, and that the further hearing, herein referred to, was had on this day, the 28th day of December, 1933, at 9 o'clock in the morning.

"Wherefore, affiant respectfully prays that an order vacating and setting aside the said judgment in the sum of $18,602.05, hereto entered, as herein referred to, and setting aside and recalling the execution, as herein referred to.

"(Signed) R. A. Heller,
"As Vice President of W. Heller &
Son, Inc., and Individually.
"I. M. Heller,
"As Pres. of W. Heller & Son, Inc.,
and Individually.

"Subscribed and sworn to before a notary public December 28, 1933."

No. 2. A supplemental affidavit was filed July 16, 1934, in support of the motion to open up the judgment, which supplemental affidavit is as follows:

"Sam Heller, being duly sworn and under oath, deposes and says that on the 17th day of October, A. D. 1931, there was executed by this affiant, Sam Heller, a certain promissory note in the principal sum of fifteen thousand five hundred ($15,500.00) dollars, with a confession of judgment clause, said note being payable to John Wynd, trustee; said note, this affiant states, appearing more specifically as Exhibit A, attached to the motion already filed herein, to set aside judgment and for leave to plead, and for stay and recall of execution.

"Affiant states that said judgment entered by this Honorable Court on the 23rd day of December, A. D. 1933, is in favor of Jefferson Trust & Savings Bank of Peoria, a corporation, and against W. Heller & Son, Inc., a corporation, R. A. Heller and I. M. Heller, in the sum of eighteen thousand six hundred and two and 5/100 ($18,602.05) dollars.

"Affiant states that the signatures on said note, i. e., the signature of W. Heller & Son, Inc., by I. M. Heller, Pres., were attached on or about, to wit, November 2nd or November 3rd, A. D. 1931.

"Affiant states that said signatures, W. Heller & Son, Inc., by I. M. Heller, Pres., and I. M. Heller, individually, on the reverse side of said note, were attached after a charter had been issued to the Jefferson Trust & Savings Bank of Peoria, a banking corporation, which is the same Jefferson Trust & Savings Bank of Peoria. as is the plaintiff in this cause of action.

"Affiant states that said signatures of W. Heller & Son, Inc., by I. M. Heller, Pres., and I. M. Heller, individually, on the reverse side of said note were procured and attached to said note subsequent to and for a long period following the time the said Jefferson Trust & Savings Bank of Peoria had been granted a charter to enter in and follow the banking business in the State of Illinois.

"Affiant states that said signature of W. Heller & Son, Inc., by I. M. Heller, Pres., and, as stated, I. M. Heller, individually, were obtained from I. M. Heller, Pres., by Harry Frankel, Albert Kahler and George Shurtleff on or about, to wit, November 2nd or November 3rd, A. D. 1931.

"Affiant states that on the day and date when the signature of W. Heller & Son, Inc., by I. M. Heller, Pres., and the signature of I. M. Heller, individually, on the reverse side of said note were procured, said note had prior thereto been placed in the custody and possession of the plaintiff herein, Jefferson Trust & Savings Bank, that is to say, that at the time the Jefferson Trust & Savings Bank of Peoria received and took possession of said note, the signature of W. Heller & Son, Inc., by I. M. Heller, Pres., and the signature of I. M. Heller, individually, on the reverse side of said note were not on said note, and that after the Jefferson Trust & Savings Bank of Peoria had taken custody and become possessed of said note the Jefferson Trust & Savings Bank of Peoria then and

there, acting through those agents, Harry Frankel, a corporate director of said Jefferson Trust & Savings Bank of Peoria, and also George Shurtleff, vice-chairman of the board of directors of said Jefferson Trust & Savings Bank of Peoria, and also Albert Kahler, secretary of the corporate board of directors of said Jefferson Trust & Savings Bank of Peoria, did procure and obtain the signature of W. Heller & Son, Inc., by I. M. Heller, Pres., and also the signature of I. M. Heller, individually, on the reverse side of said note.

"Affiant further states that at the time said Harry Frankel obtained said signatures of W. Heller & Son, Inc., by I. M. Heller, Pres., and the signature of I. M. Heller, individually, on the reverse side of said note, the said Harry Frankel, George Shurtleff and Albert Kahler were acting as authorized agents of the plaintiff, Jefferson Trust & Savings Bank of Peoria, and then and there, and at said time, John C. Wynd, the corporate vice-president of the Jefferson Trust & Savings Bank of Peoria, and George Shurtleff, vice-chairman of the board of directors of the Jefferson Trust & Savings Bank of Peoria, and Albert Kahler, secretary of the corporate board of directors of the Jefferson Trust & Savings Bank of Peoria, with full knowledge and information, participated in their corporate official capacity, in the action of Harry Frankel, George Shurtleff and Albert Kahler, as aforesaid, in procuring the signature of W. Heller & Son, Inc., by I. M. Heller, Pres., and the signature of I. M. Heller, individually, as alleged.

"(Signed)   Sam Heller.

"Subscribed and sworn to before a notary public."

It is the contention of the defendants that their motion to set aside the judgment and for leave to plead, supported by affidavits, presented facts that constituted a number of adequate and separate defenses to the claim of the plaintiff of the note in question.

They claim that there is a failure of consideration; that the execution of the note in question was ultra vires on the part of W. Heller & Son, Inc.; that there was fraud in the procurement and execution of the promissory note; that there was misrepresentation in obtaining the note; and that there was a conspiracy to defraud the defendants.

The appellee replied that the motion which the defendants filed was to vacate the judgment and give leave to plead, whereas the only relief to which they are entitled in the event they have shown a defense as against the appellee, is to have the judgment opened and stand as security for the note. They claim that the abstract of record does not contain the judgment sought to be set aside, and in order to obtain a reversal of such judgment it must appear in the abstract; also that the affidavits are not positive but are largely made on information and belief; that the facts should be stated in positive language; that the alleged defenses of the appellant are not sufficient in law even if they had been stated in positive language.

The abstract does not set forth the original judgment obtained on the note, but this appeal is not from that judgment. This is an appeal from the judgment of the court in overruling the defendants' motion to open up the judgment and for leave to plead to the merits. This judgment does appear in the abstract of record. In the case of *Boyles v. Chytraus,* 175 Ill. 370, it is stated: ''If the plaintiffs in error had made a motion in proper time in the court below to vacate the judgment entered, and that motion had been overruled, and the action of the court had been presented by a proper bill of exceptions, this court could review a refusal of the court below to vacate the judgment in accordance with such motion. A writ of error will lie to review the overruling of a motion to vacate the judgment, but will not lie to review the judgment itself

when errors are waived and released in the manner above stated.''

It will be observed from the language used in the *Boyle* case that the motion evidently was to vacate the judgment and for leave to plead. While the motion may not have been technically correct, in the present case, it is one that is used frequently in motions to open up the judgments and we think it is proper if supported by sufficient affidavits.

We cannot agree with the appellee that the affidavits in question are on information and belief, but giving the language used in the affidavits a reasonable construction, it is our opinion they state facts and not conclusions of the pleader.

Counsel for appellee in their argument have made numerous suggestions relative to the facts in the case that do not appear in the record. In considering the sufficiency of the motion and affidavits we can only consider the facts as set forth in the affidavits and motion. It is our opinion that sufficient facts are set forth in the affidavits to warrant the court in allowing the motion to open up this judgment and for the defendant to have leave to file pleas setting forth his defense to the action on the note in question; and that the trial court erred in overruling the motion of the defendant for this purpose. The judgment of the circuit court of Peoria county is hereby reversed and the case remanded.

*Reversed and remanded.*